IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.B., *A MINOR*, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SCHUYLKILL COUNTY et al., | : | No. 18-756 |
| Defendants. | : | |

## MEMORANDUM

PRATTER, J.                                                                                                                       APRIL 24, 2019

Two discovery motions are at issue here.[1]

First, J.W., a non-party minor, seeks a protective order to ensure that his Court-appointed Guardian *ad litem* will "have an opportunity to review any and all third party or other records, documents, files, etc. in order to properly assert and protect any federal privilege of nonparty minor JW by redacting or causing to be redacted any federally privileged and protected confidential communications of JW." Mot. for Protective Order at 3.[2] Specifically, J.W. asserts that documents produced in the course of discovery are (or may be) protected by the federal psychotherapist privilege. *Id.*[3]

---

[1] The Court discussed at length the facts of this case, as alleged in the Amended Complaint, in its previous Memorandum addressing the defendants' (now-decided) motions to dismiss. *See M.B. v. Schuylkill Cty.*, No. CV 18-756, 2019 WL 1317565, at *1 (E.D. Pa. Mar. 21, 2019) (Doc. No. 69).

[2] It bears noting that, prior to the Court's appointment of a Guardian *ad litem* to protect the interests of J.W. in this matter, the parties stipulated to and the Court ordered entry of a protective order. *See* Doc. No. 33.

[3] J.W., in addition to seeking a protective order to allow him to assert the psychotherapist privilege where applicable, discusses the potential applicability of various Pennsylvania state law privileges and confidentiality protections. J.W. concludes that these state privileges and protections are not applicable in this federal case based on the Third Circuit Court of Appeals'

1

Second, plaintiff M.B., through her court-appointed Guardian *ad litem*, moves to compel production of subpoenaed materials from (1) the Bucks County District Attorney's Office and (2) the Quakertown Police Department. The materials relate to a law enforcement investigation of a sexual assault allegedly perpetrated by J.W., all of which have been submitted to and reviewed by J.W.'s Guardian *ad litem* for potential privilege issues. Although J.W. does not object to the documents' production, defendant Schuylkill County suggests that production may be improper.[4] As a result, the parties jointly agreed to delay production, and M.B. moved to compel production.

The Court will grant the Motion for Protective Order, because the psychotherapist privilege is an accepted federal privilege, and the Court will grant the Motion to Compel, as described below.

## DISCUSSION

### I. Motion for Protective Order

Federal law has recognized, at least since the Supreme Court's decision in *Jaffee v. Redmond*, 518 U.S. 1 (1996), that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.* at 15. The privilege protects communications between patients, on the one hand, and psychiatrists, psychologists, and social workers, on the other. *Id.*

M.B. argues, however, that the privilege should not be applied in this case for three reasons. First, M.B. appears to contend that the privilege "only applies to specific communications made during the course of diagnosis." Opp. to Mot. for Protective Order at 5. Second, M.B. asserts that

---

decision in *Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000). Because of the court's holding in *Pearson*, J.W. does *not* seek a ruling implicating state law privileges and protections.

[4] Schuylkill County and KidsPeace previously sought to stay production until after the Court ruled on the defendants' motions to dismiss. The Court has ruled on those motions and, therefore, KidsPeace no longer objects to production of the at-issue documents.

2

communications made "during mandated counseling sessions" are not privileged because the proponent for protection had no reasonable expectation of confidentiality. *Id.* at 6. Third, M.B. states that as a matter of policy, her need for the materials in the documents is greater than J.W.'s interest in maintaining the privacy of his communications with therapists. *Id.* at 8–9.

As an initial matter, M.B. takes too narrow a view of the Supreme Court's decision in *Jaffe*. In that case, the Court stated that the psychotherapist privilege protected confidential communications made "in the course of diagnosis *or treatment*[.]" 518 U.S. at 15 (emphasis added). Although the Third Circuit Court of Appeals does not appear to have had occasion to discuss what it means for a statement to be made "in the course of diagnosis or treatment,"[5] other federal courts have stated that "[w]hether a meeting occurred 'in the course of diagnosis or treatment' is a factual determination that rests upon consideration of the totality of the circumstances." *United States v. Romo*, 413 F.3d 1044, 1047 (9th Cir. 2005) (quoting *Jaffe*, 518 U.S. at 15).[6] Furthermore, the Court in *Jaffe* explicitly rejected the lower court's attempt to balance "the evidentiary need for the disclosure . . . [against] the patient's privacy interests." 518 U.S. at

---

[5] In *Pearson*, the Third Circuit Court of Appeals looked to *Jaffe* for guidance in deciding whether federal privilege law, as described in Federal Rule of Evidence 501, encompassed state confidentiality laws. *See* 211 F.3d at 65–74. In so doing, the court commented that "federal law does recognize a privilege that would seem to overlap the privilege under the [Pennsylvania Mental Health Procedures Act]: the psychotherapist privilege." *Id.* at 70. The court did not, however, explain the nature of the overlap between the MHPA and the federal psychotherapist privilege.

[6] *See also United States v. Sampson*, No. 01-10384, 2014 WL 3950501, at *1 (D. Mass. Aug. 11, 2014) ("[W]hether the communications occurred in the course of diagnosis or treatment 'calls for a fact-intensive analysis.'") (quoting *United States v. Loughner*, 782 F. Supp. 2d 829, 832 (D. Ariz. 2011); *United States v. Hudson*, No. 13-20063-01, 2013 WL 4047145, at *5 (D. Kan. Aug. 9, 2013) ("To determine whether a meeting occurred 'in the course of diagnosis or treatment,' the Court considers the totality of the circumstances.") (quoting *Romo*, 413 F.3d at 1047); *Batts v. Cty. of Santa Clara*, No. 08-00286, 2010 WL 3749436, at *4 (N.D. Cal. Sept. 23, 2010) (same); *cf.* Nicholas Sydow, *A "Shrink"-Ing Privilege: United States v. Romo and the "Course of Diagnosis" Requirement of the Psychotherapist-Patient Privilege*, 41 Harv. C.R.-C.L. L. Rev. 265, 271 (2006) (criticizing *Romo*'s totality of the circumstances framework for "substantially increas[ing] [parties'] difficulty in invoking the psychotherapist-patient privilege").

3

7 (quotation and citation omitted); *see also id.* at 17. The Court made clear that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* at 17.

Upon consideration of *Jaffe*, and because J.W. only seeks the *opportunity* to invoke the privilege (but has not yet actually identified which documents are purportedly privileged), the Court will grant the request insofar as J.W. seeks additional protections to ensure that he may invoke the privilege as is appropriate. The Court will not, however, make a blanket ruling before there is a specific privilege determination to be made. As even M.B. acknowledges, her arguments are based on what she "assumes" about the context in which J.W. made any potentially privileged statements. Opp. to Mot. for Protective Order at 7. If and when there is a specific challenge to the propriety of J.W.'s invocation of the psychotherapist privilege, then the Court can and will assess whether the privilege was properly deployed.

The Court directs the parties and J.W. to prepare a joint proposed revised protective order,[7] which should ensure, at least, that J.W.'s Guardian *ad litem* (1) reviews discovery for privileged materials and redacts those materials as needed, (2) maintains a detailed privilege log, and (3) provides documents to the Court for *in camera* review, should a privilege determination be challenged.

## II. Motion to Compel Law Enforcement Records

M.B. moves to compel production of materials she subpoenaed from the Bucks County District Attorney's Office and the Quakertown Police Department. Initially, the documents were

---

[7] If the parties and J.W. are unable to craft a joint proposal, they may submit individual proposals if absolutely necessary.

4

produced to J.W.'s Guardian *ad litem*, to allow J.W. to review the documents and determine whether any privilege attached to the documents. J.W. takes the position that "there is no federal privilege which would prevent the disclosure of the subpoenaed materials[.]" Status Report at 4. The KidsPeace Defendants concur with J.W., but Schuylkill County appears to object to the production.

Schuylkill County argues that the at-issue documents may be protected pursuant to state law privileges or protections, specifically Pennsylvania's Child Protective Services Law, Juvenile Act, Mental Health Procedures Act, and Criminal History Records Information Act. But the Third Circuit Court of Appeals' decision in *Pearson v. Miller*—which held that that the confidentiality provisions included in the Child Protective Services Law, Juvenile Act, and Mental Health Procedures Act do not create a federal privilege—presents an obstacle for Schuylkill County. *See* 211 F.3d at 61. As a result, Schuylkill County argues that *Pearson* is distinguishable, and so the privileges rejected in *Pearson* may nonetheless apply here.[8] Schuylkill County's position is unconvincing for three reasons.

First, Schuylkill County does not state specifically how or why the Court should apply the state law confidentiality protections to the particular materials being sought, all of which are records that were maintained by either (1) the Bucks County District Attorney's Office or (2) Quakertown Police Department. The Court will not speculate about whether some of the materials included in the production *might* potentially be protected by the state's confidentiality protections.

---

[8] Schuylkill County distinguishes *Pearson* in both the parties' Status Report as well as in its Opposition to the Motion to Compel. The Opposition to the Motion to Compel also incorporates by reference Schuylkill County's Response to J.W.'s Motion for Protective Order, which also discusses *Pearson*.

5

It is also not clear what interest, if any, Schuylkill County has in maintaining the confidentiality of records prepared and produced by separate local agencies.

Second, Schuylkill County does not effectively distinguish *Pearson*. Although the Court takes no position as to whether there may be other circumstances in which *Pearson* does not apply, the Court is not convinced that this Motion is outside of *Pearson*'s ambit. In *Pearson*, the Third Circuit Court of Appeals held that Federal Rule of Evidence 501 did not create a privilege protecting records from disclosure under Pennsylvania's Child Protective Services Law, Juvenile Act, or Mental Health Procedures Act because the defendant there had already waived his confidentiality interest in the at-issue materials. 211 F.3d at 70. Because the defendant in *Pearson* had waived confidentiality, the court stated:

> the question presented is not whether there are evidentiary privileges protecting [the defendant's] interests under Rule 501, but whether federal law is to recognize one or more privileges directed at the interests of third parties whose interests may be affected by the release of the information here in dispute. Because the primary interests at stake—[the defendant's]—have been taken off of the table, the privileges sought by the appellants must necessarily focus on the secondary interests at stake.

*Id.* at 70–71.

Here, although J.W. has not necessarily *waived* his privacy interests, he has, in the context of this Motion, stated that he does not oppose production. Status Report at 4.[9] In other words, like in *Pearson*, the only interests currently jeopardized are those of governmental third parties, and so the Court must follow *Pearson*'s command that "a Rule 501 evidentiary privilege held by the

---

[9] Schuylkill County also attempts to distinguish *Pearson* by noting that the party invoking the privilege there, Bruce Miller, (1) was the defendant (here, J.W. is a third party) and (2) invoked the privilege despite no longer being a minor (here, J.W is still a minor). Although Schuylkill County is correct that these facts represent differences between this case and *Pearson*, neither difference is a material distinction affecting *Pearson*'s applicability.

government would be an unacceptably imprecise tool for the protection of a broad and varied landscape of interests." *Id.* at 72.

Third, as discussed at length in *Pearson*, protective orders under Federal Rule 26(c), and not privilege determinations under Federal Rule 501, are best suited to protect third parties' interests. *Id.* at 72–74. Federal Rule 26 authorizes the Court "to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests—including privacy and other confidentiality interests—that might be harmed by the release of the material sought." *Id.* at 65. To that end, the court in *Pearson* observed that a Rule 26(c) protective order "prevent[ing] anyone other than counsel from viewing or learning the contents of any of the material sought . . . seem[ed] entirely sensible at this point, since any restrictions that would (a) further legitimate interests in confidentiality, but (b) would not interfere with appellee's needs at this early stage, would be appropriate." *Id.* at 73. Unlike in *Pearson*, however, the Court has already entered a protective order placing substantial limitations on the handling of material designated "protected." Doc. No. 33 at 3–5.

Because the interests at issue here are similar to the interests that *Pearson* determined to be insufficient to warrant application of a federal privilege, the Court will grant the Motion to Compel. Should Schuylkill County consider that further restrictions are needed to address its confidentiality concerns, it may move to supplement or revise the protective order as needed.

## Conclusion

For the foregoing reasons, the Motion for Protective Order is granted and the Motion to Compel is granted. However, the Court will stay entry of an order to that effect for fourteen (14) days, to allow the parties to submit proposed revisions to the existing protective order. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE