

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| M.B., A MINOR, BY AND THROUGH : <br> JAMES ROCCO, III, ESQUIRE, : <br> HER *GUARDIAN AD LITEM*, : <br> : <br>          Minor-Plaintiff : <br> v. : <br> : <br> SCHUYLKILL COUNTY, : <br> MARCIA HOKE, Individually and : <br> In her official capacity as Case : <br> Worker of Schuylkill County : <br> Children & Youth Services, : <br> : <br>          Defendants : <br> : <br>          and : <br> : <br> KIDSPEACE, KIDSPEACE NATIONAL : <br> CENTERS, INC., KIDSPEACE : <br> CORPORATION, : <br> : <br>          Defendants and Third : <br>          Party Plaintiffs : <br> : <br>          and : <br> : <br> KELSEY O'HARA, : <br> Individually and in her official : <br> Capacity as Case Worker of : <br> KidsPeace's Doylestown Office, : <br> HEATHER MOORE, Individually : <br> And in her official capacity as : <br> Program Manager of KidsPeace's : <br> Doylestown Office, : <br> : <br>          Defendants : <br> : <br>          and : <br> : <br> K.B. AND P.B., INDIVIDUALLY, AND : <br> AS PARENTS AND NATURAL : <br> GUARDIANS OF : <br> MINOR-PLAINTIFF, M.B., : <br> : <br>          Third Party Defendants. : | Civil Action <br> No. 18-CV-00756-GEKP |

## THIRD PARTY COMPLAINT OF DEFENDANTS, KIDSPEACE, KIDSPEACE CORPORATION, AND KIDSPEACE NATIONAL CENTERS, INC.

Defendants, and Third Party Plaintiffs, KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc., hereby join K.B. and P.B. as Third Party Defendants and aver as follows:

1. This action was instituted by a Complaint filed by M.B., a minor, by K.B. and P.B., her parents and natural guardians, and K.B. and P.B., in their own right.

2. The action alleges that the corporate entities KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. provided foster care services to K.B. and P.B. including the placement of J.W. resulting in the injuries alleged by M.B.

3. On August 6, 2018, K.B. and P.B., in their capacity as plaintiffs in their own right, and pursuant to Fed.R.Civ.P. 41(a)(1) gave notice of dismissal of their individual claims asserted in the above matter and, accordingly, were no longer parties to this action.

4. By Order dated September 13, 2018, James Rocco, III, Esquire, was appointed as guardian a*d litem* on behalf of the minor, M.B., and on October 23, 2018, filed an Amended Complaint on behalf of M.B., a minor.

5. Plaintiffs, K.B. and P.B., are wife and husband and reside in Montgomery County, Pennsylvania.

6. From her life experiences, K.B. is familiar with issues involving physical and sexual abuse of children as well as foster care and adoption.

7. K.B. is a college graduate and also has a master's degree.

8. K.B. has a past work experience as a teacher, in particular, for infant care.

9. K.B. has also worked as a nanny.

1

10. K.B. and P.B. are experienced foster parents.

11. Upon information and belief, K.B. and P.B. have fostered over twenty children through one other agency.

12. K.B. and P.B. formally adopted the minor-plaintiff, M.B. and her brother K.G.B.

13. K.B. and P.B. are the legal parents and guardians of M.B. and as such, are responsible for her care, custody and safety during all relevant times.

14. At all relevant times, K.B. chose to stay at home to care for M.B. and K.G.B.

15. At all relevant times, P.B. worked at a restaurant so that he could spend time with his children in the morning and evening.

16. Prior to her adoption by K.B. and P.B., M.B. experienced trauma placing her in the foster care system.

17. Along with her emotional and psychological needs, M.B. is alleged to be a special needs child with developmental disabilities.

18. At the time of her adoption, M.B. had already been diagnosed with reactive attachment disorder and was noted to have difficulties in communicating.

19. In March 2017, K.B. and P.B. sought to change their association from one foster care placement agency to KidsPeace National Centers, Inc.

20. K.B. and P.B. provided an application and were interviewed multiple times by KidsPeace National Centers, Inc. for purposes of K.B. and P.B. demonstrating their abilities to care for a foster child.

21. In considering the application of K.B. and P.B. to be foster parents, KidsPeace National Centers, Inc. provided a family functioning and eco map analysis as well as prepared a genogram and social history profile.

22. In creating this analysis and profile, K.B. and P.B.'s medical, counseling, and mental health history were reviewed.

23. The analysis and profile included KidsPeace National Centers, Inc. considering M.B. and K.G.B.'s physical, emotional, psychological, and scholastic abilities.

24. KidsPeace National Centers, Inc. also contacted and reviewed personal references provided by K.B. and P.B.

25. K.B. and P.B. represented to KidsPeace National Centers, Inc. that their personal life experiences, as disclosed in detail to KidsPeace National Centers, Inc., made them uniquely qualified to care for foster children.

26. K.B. and P.B. also represented to KidsPeace National Centers, Inc. that the opportunity to foster children satisfied their interests to provide children a better childhood than they experienced.

27. K.B. and P.B. represented to KidsPeace National Centers, Inc. that they desired to foster multiple children at once and that based on K.B.'s staying at home and P.B.'s schedule, they were well positioned to foster multiple children.

28. During the application process, KidsPeace National Centers, Inc. received:

   a. a certificate of approval from the Commonwealth of Pennsylvania providing approval for K.B. and P.B. to serve as foster parents;

   b. Pennsylvania Department of Human Services issued a Child Abuse History Certification;

   c. the Pennsylvania State Police provided records demonstrating a clean criminal record history;

   d. The Federal Bureau of Investigations provided certification of no records found related to criminal records and records under the Child Protective Services Law;

   e. Personal reference statements; and

f. K.B. and P.B.'s former foster care agency provided a reference.

29. During the approval process, K.B. and P.B. completed forms indicating their preference as to the characteristics of foster children that would be acceptable to them and the type of foster care placement they were willing to consider.

30. Prior to approval, K.B. and P.B. completed a Foster Family Behavioral Acceptance Survey representing their abilities and willingness to accept foster children with a variety of issues including, but not limited to, children with self-care issues including dressing incorrectly and poor hygiene; issues related to interaction with peers including associating with younger children and desiring to participate in aggressive or destructive play; needs for consistent structure and constant supervision; issues concerning inappropriately displays affection; and issues with anxiety.

31. K.B. and P.B. indicated that they were willing to accept "foster to adopt" as well as emergency foster care placement children.

32. K.B. and P.B. indicated a preference to foster a male aged 0-10 or an infant female.

33. K.B. and P.B. indicated their preference for a male foster child was based upon their experience in raising M.B.

34. Despite K.B. and P.B. being experienced foster parents, KidsPeace National Centers, Inc. required them to participate and show proficiencies in mandatory classes and self-study programs.

35. K.B. and P.B. were informed of their approval as a potential foster family on May 10, 2017.

36. On May 15, 2017, K.B. and P.B. signed an agreement with KidsPeace National Centers, Inc.

37. In the agreement, K.B. and P.B. agreed to furnish twenty-four hour foster care including the providing of the ordinary needs of a foster child including room, food, clothing, transportation, and parental guidance.

38. K.B. and P.B. agreed that there would not be negligent, abusive or detrimental behavior towards the foster child.

39. K.B. and P.B. further agreed to act in accordance with KidsPeace National Centers, Inc.'s policies and DHS' regulations.

40. KidsPeace National Centers, Inc. agreed to provide K.B. and P.B. information "[w]hen available" related to any foster child placed with them.

41. In the agreement, K.B. and P.B. acknowledged that "[t]he availability and timeliness of this information being available to KidsPeace will affect how quickly it can be shared with [K.B. and P.B.]."

42. KidsPeace National Centers, Inc. also promised to provide crisis intervention services to K.B. and P.B. on a twenty-four hour a day, seven day a week basis.

43. K.B. and P.B. were also given a Resource Parent Rights and Responsibilities agreement.

44. In that agreement, K.B. and P.B. were provided information about their rights to request a foster child's immediate removal if they felt that the foster child made the home unsafe.

45. It further provided K.B. and P.B. information about the availability of twenty-four hours per day contact information for case worker, office and on-call assistance.

46. In May 2017, Schuylkill County contacted KidsPeace National Centers, Inc. seeking a foster placement for J.W.

47. The County provided KidsPeace National Centers, Inc. with certain information about J.W. including basic information such as his age, that he had been physically abused, and that he was presently in a longer term care program at Lehigh Valley – Schuylkill Hospital for psychiatric treatment related to an incident in which when J.W. was confronted about an incident of his seeking to kiss another similar age boy he flipped a table over and threatened to hurt himself.

48. KidsPeace National Centers, Inc. contacted K.B. and P.B. with the prospect of fostering J.W.

49. K.B. and P.B. were told that J.W. was eleven years old, acted younger than his age, was the victim of neglect and physical abuse, and was currently residing at Lehigh Valley – Schuylkill Hospital, for psychiatric treatment related to his reaction to an incident involving J.W. kissing another similar age boy.

50. K.B. and P.B. expressed excitement about the possibility to foster J.W. including asking questions about his preferences in toys and colors.

51. K.B. and P.B. talked to J.W. and upon information and belief, on or about May 22, 2017, K.B. and P.B., along with M.B. and K.G.B, met with J.W. at the hospital and spoke with medical professionals at the hospital.

52. As alleged in the Amended Complaint, "no hospital representative raised any red flags" concerning J.W. being fostered by K.B. and P.B. and their family.

53. After meeting J.W. and the treating professionals at the hospital, K.B. and KidsPeace National Centers, Inc. discussed their mutual empathy for J.W. because of his past abuse and length of time placed in the hospital.

54. K.B. and P.B. immediately requested the opportunity to foster J.W.

55. On May 25, 2017, the County transported J.W. to K.B. and P.B.'s home.

56. At this meeting, the County answered questions raised by K.B. about M.B.

57. KidsPeace National Centers, Inc. was at the meeting and heard or reiterated the information provided by the County to KidsPeace National Centers, Inc. and previously given to K.B. and P.B.

58. It was again explained to K.B. of J.W.'s need to be on prescribed medication for behavior reasons and his need for ongoing counseling to address his traumatic past.

59. K.B. then signed the Foster Care Referral Form which identified, for example, the following about J.W.: that he was coming from hospitalization; he was a victim of physical abuse; he had been in multiple foster homes; he was removed from his last foster home after making a verbal threat to hurt himself after "asking out" another boy; he was on prescribed medication; his current diagnosed medical issues; he was not to have contact with his family or past caregivers; his referral diagnosis was unavailable to KidsPeace National Centers, Inc.; any prior treatment information was unavailable to KidsPeace National Centers, Inc.; he received special education for emotional support; and that the source of the information was Schuylkill County.

60. K.B. certified that all information on the Referral Form was reviewed with her.

61. K.B. certified that K.B. and P.B. were capable of handling J.W. and accepting J.W. into their home.

62. K.B. and P.B. then accepted J.W. into their home.

63. As pled in the Amended Complaint, on May 26, 2017, K.B. sent a text message to KidsPeace National Centers, Inc. claiming that J.W. had disclosed that he had been sexually abused.

64. KidsPeace National Centers, Inc. contacted the County and relayed the information back to K.B. that J.W.'s allegation of sexual abuse had been investigated and deemed unfounded.

65. It is also alleged in the Amended Complaint, that on May 30, 2017, J.W. allegedly told K.B. that another boy tried to kiss him prior to being placed with K.B. and P.B.

66. It is alleged in the Amended Complaint, that K.B. around May 30, 2017, learned that J.W. in a prior foster care home asked a boy to have sex with him.

67. According to the Amended Complaint, on or about June 5, 2017, KidsPeace National Centers, Inc. advised K.B. and P.B. that J.W. was not permitted to be placed in a home with his biological brothers, disclosing that J.W. manipulated his biological brothers to do bad things and the relationship was not healthy.

68. According to the Amended Complaint, on or about June 11, 2017, K.B. reported that J.W. advised them that he was molested by a former foster mother. KidsPeace investigated and advised K.B. and P.B. that J.W. had previously made this allegation, that it was investigated, and it was determined to be unfounded.

69. During this time, K.B. claimed that J.W. was displaying inappropriate boundary issues between him and M.B. and K.G.B. such as wanting them to sit on his lap.

70. According to the Amended Complaint, K.B. and P.B. knew that J.W. acted significantly below his age.

71. According to the Amended Complaint, K.B. and P.B. knew that J.W. allegedly tried to inappropriately kiss P.B.

72. According to the Amended Complaint, had K.B. and P.B. known of the above information they "would not have agreed to foster J.W. in their home given this background and his potential for abuse."

73. Accordingly, pursuant to the Amended Complaint, such information lead K.B. and P.B., based on their own experiences and expertise, to conclude upon learning this information prior to the alleged assault that it was foreseeable that J.W. was a threat to M.B.

74. Notwithstanding the disclosure of historical, psychiatric, emotional and behavioral information regarding J.W., K.B. and P.B. did not request immediate removal of J.W. or request a delayed removal based on the information provided by KidsPeace National Centers, Inc., the County, or from the alleged disclosures made by J.W. According to the Amended Complaint, K.B. and P.B. found this information to be "alarming" and "would have caused K.B. and P.B. to decline to foster J.W."

75. According to the Amended Complaint, on June 15, 2017, a representative of Catholic Social Services met with K.B. and P.B. pursuant to its obligations under the SWAN program to identify a permanent adoptive home for J.W.

76. According to the Amended Complaint, the representative told K.B. and P.B. that J.W. was not to be placed in a home with younger children and that she was "surprised" by his foster placement.

77. According to the Amended Complaint, K.B. and P.B. found that information "beyond troubling and not previously disclosed" and "[h]ad it been disclosed, K.B. and P.B. would obviously not have agreed to foster J.W. in their home."

78. Accordingly, pursuant to the Amended Complaint, such information lead K.B. and P.B., based on their own experiences and expertise, to conclude upon learning this information prior to the alleged assault that it was foreseeable that J.W. was a threat to M.B.

79. Notwithstanding the disclosure of historical, psychiatric, emotional and behavioral information regarding J.W., K.B. and P.B. did not request immediate removal of J.W. or request a delayed removal based on the information provided by KidsPeace National Centers, Inc., the County, or from the alleged disclosures made by J.W.

80. From the time of placement until the time of J.W.'s removal, K.B. had regular contact via text messaging, emails, telephone calls, or in person meetings with KidsPeace National Centers, Inc. on almost a daily basis.

81. According to the Amended Complaint, on June 16, 2017, M.B. told K.B. and P.B. that J.W. entered her room the night before and engaged in inappropriate and offensive conduct.

82. According to the Amended Complaint, "[i]mmediately upon hearing this incident," K.B and P.B. then utilized the emergency contact information provided by KidsPeace National Centers, Inc. requesting that J.W. be removed from the house.

83. According to the Amended Complaint, the above-described conduct made the alleged incident and the "specific" resulting harms to M.B. "foreseeable and direct."

84. According to the Amended Complaint, such conduct in not removing J.W. constitutes "unlawful[], and/or intentional[], unreasonable[], willful[], reckless[], malicious[], and/or deliberate and/or reckless indifference to" M.B.

85. According to the Amended Complaint, the incident was preventable for "[f]ailing to remove J.W." from the home "even though he posed a risk to [M.B.]."

10

86. According to the Amended Complaint, based on the conduct described above, KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. "should have known of his serious behavioral, psychological and molestation propensities to others, particularly [M.B.]"

87. According to the Amended Complaint, based on the conduct described above, KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. "[f]ail[ed] to exercise due care by not properly monitoring and supervising J.W. when they knew or should have known of J.W.'s potential danger to others."

88. According to the Amended Complaint, based on the conduct described above, KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc., "fail[ed] to remove J.W. from [M.B.'s] home despite his dangerous propensities" and his "pos[ing] a risk to [M.B.]"

89. According to the Amended Complaint, based on the conduct described above, KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. "fail[ed] to remove J.W. from [M.B.'s] home after concerning events were raised by [K.B and P.B.]."

90. According to the Amended Complaint, based on the conduct described above, KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. "fail[ed] to take action to seek the removal of J.W. from [M.B.'s] home despite awareness that he should not be with younger children."

91. According to the Amended Complaint, based on the conduct described above, KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. "fail[ed] . . . to ensure that [J.W.] was timely removed."

92. According to the Amended Complaint, based on KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc.'s knowing the information set forth above, they are the direct and proximate cause of M.B.'s alleged medical expenses, severe psychological injuries, and pain and suffering.

93. If it is judicially determined that any of the information disclosed to K.B. or P.B. as set forth above, or as revealed in the course of discovery, should have rendered a sexual assault of the minor, M.B., by J.W. forseeable, then Third Party Defendants knew or should have known that J.W. posed a danger to M.B. and failed to take appropriate steps to protect her or request the removal of J.W.

94. If it is judicially determined that KidsPeace, KidsPeace Corp., KidsPeace National Centers, Inc. are liable to Plaintiff, then Third Party Defendants, K.B. and P.B., are liable over to Defendants or jointly and severally liable with Defendants, the existence of any liability on behalf of Defendants, however, being expressly denied.

## COUNT I
### NEGLIGENCE

95. Defendants/Third-Party Plaintiffs KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. incorporate by reference the averments contained in paragraphs 1 through 94.

96. Third-Party Defendants had a duty of care to minor-Plaintiff to protect and supervise minor-Plaintiff so as to prevent her from harm.

97. Third-Party Defendants breached this duty by acquiring knowledge prior to the alleged assault of the alleged perceived risk J.W. posed to minor-Plaintiff; as alleged in the Amended Complaint, knowing or foreseeing J.W. as a threat to minor-Plaintiff; and failing to take

12

steps to shield minor-Plaintiff from this purported risk, such as by requesting that J.W. be removed from Third-Party Defendants' home.

98. Third-Party Defendants' actions are the direct and proximate cause of minor-Plaintiff's alleged injuries.

99. To the extent that it is judicially determined that minor-Plaintiff suffered harm, said harm was caused by the Third-Party Defendants' failure to act in accordance with their duty of care, and Third-Party Defendants are liable for damages as a result.

**WHEREFORE,** KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. as Third Party Plaintiffs, pray that judgment be entered against K.B. and P.B. on the basis of sole liability, liability over to Third Party Plaintiffs or joint and severally liable for any sums that may be adjudged against answering or other defendants in this matter, the existence of any liability being expressly denied.

## COUNT II
## NEGLIGENT SUPERVISION

100. Defendants/Third-Party Plaintiffs KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. incorporate by reference the averments contained in paragraphs 1 through 99.

101. Third-Party Defendants, as the sole caregivers and then-foster parents of J.W., knew of their ability to control J.W. and protect minor-Plaintiff.

102. Prior to the alleged assault, Third-Party Defendants, as alleged in the Amended Complaint, acquired knowledge concerning the purported "troubled history" of J.W. and, accordingly, if such information made J.W.'s actions foreseeable, they knew of the necessity to exercise control over J.W.'s actions and protect minor-Plaintiff.

13

103. Third-Party Defendants had a duty to exercise reasonable care to control their minor foster child, J.W., so as to prevent him from intentionally harming minor-Plaintiff or creating an unreasonable risk of bodily harm to her.

104. Third-Party Defendants failed to act in accordance with this standard of care.

105. To the extent that it is judicially determined that minor-Plaintiff suffered harm, said harm was caused by Third-Party Defendants' negligent control and supervision of J.W., and Third-Party Defendants are liable for damages as a result.

**WHEREFORE,** KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. as Third Party Plaintiffs, pray that judgment be entered against K.B. and P.B. on the basis of sole liability, liability over to Third Party Plaintiffs or joint and severally liable for any sums that may be adjudged against answering or other defendants in this matter, the existence of any liability being expressly denied.

## COUNT III
## NEGLIGENCE *PER SE*

106. Defendants/Third-Party Plaintiffs KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. incorporate by reference the averments contained in paragraphs 1 through 105.

107. Third-Party Defendants were obligated to follow Department of Human Services Regulations to provide a safe household.

108. If the conduct alleged in the Amended Complaint occurred, Third-Party Defendants failed to comply with the regulations in making the home safe causing harm to J.W. and minor-Plaintiff.

**WHEREFORE,** KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. as Third Party Plaintiffs, pray that judgment be entered against K.B. and P.B. on the basis

14

of sole liability, liability over to Third-Party Plaintiffs or joint and severally liable for any sums that may be adjudged against answering or other defendants in this matter, the existence of any liability being expressly denied.

## COUNT IV
## BREACH OF CONTRACT

109. Defendants/Third-Party Plaintiffs KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. incorporate by reference the averments contained in paragraphs 1 through 108.

110. Third-Party Defendants agreed that there would be no negligent, abusive or detrimental behavior towards the foster child.

111. Third-Party Defendants agreed to act in accordance with KidsPeace National Centers, Inc.'s policies and DHS' regulations.

112. Third-Party Defendants agreed to seek removal, including immediate removal, in the event that a foster child was not in a safe environment.

113. If the allegations of the Amended Complaint are true, Third-party Defendants' failure to properly supervise and monitor the conduct of J.W. created an unsafe environment.

114. Third-Party Defendants breached the agreement.

115. As a result, if minor-Plaintiff prevails, Third-Party Plaintiffs will be damaged.

**WHEREFORE,** KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. as Third Party Plaintiffs, pray that judgment be entered against K.B. and P.B. on the basis of sole liability, liability over to third party plaintiffs or joint and severally liable for any sums that may be adjudged against answering or other defendants in this matter, the existence of any liability being expressly denied.

## COUNT V
## CONTRIBUTION

116. Defendants/Third-Party Plaintiffs KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. incorporate by reference the averments contained in paragraphs 1 through 115.

117. To the extent that minor-Plaintiff suffered injuries and damages, Third Party Defendants' were negligent and, accordingly, caused minor-Plaintiff's damages by failing to protect and supervise minor-Plaintiff so as to prevent her from harm, and failing to supervise and control J.W. so as to prevent him from causing harm to minor-Plaintiff.

118. To the extent it is determined that minor-Plaintiff sustained the injuries and damages set forth in her Amended Complaint, and to the extent that the KidsPeace Defendants are deemed liable for any such injuries or damages and pay more than their pro rata share of any judgment, Third-Party Defendants by virtue of their negligence are liable to the KidsPeace Defendants for contribution.

**WHEREFORE,** KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. as Third Party Plaintiffs, pray that judgment be entered against K.B. and P.B. on the basis of sole liability, liability over to third party plaintiffs or joint and severally liable for any sums that may be adjudged against answering or other defendants in this matter, the existence of any liability being expressly denied.

## COUNT VI
## **INDEMNITY**

119. Defendants/Third-Party Plaintiffs KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. incorporate by reference the averments contained in paragraphs 1 through 118.

120. If Defendants/Third-Party Plaintiffs KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. are liable to minor-Plaintiff solely by operation of law, it is because Third-party Defendants are responsible for minor-Plaintiff's harm.

121. Defendants/Third-Party Plaintiffs KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. are without fault.

122. If Defendants/Third-Party Plaintiffs KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. are found at fault it is solely because of their relationship to Third-party Defendants.

**WHEREFORE,** KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. as Third Party Plaintiffs, pray that judgment be entered against K.B. and P.B. on the basis of sole liability, liability over to third party plaintiffs or joint and severally liable for any sums that may be adjudged against answering or other defendants in this matter, the existence of any liability being expressly denied.

Respectfully submitted,

ECKERT SEAMANS CHERIN
& MELLOTT, LLC

*[signature]*

Frank R. Emmerich Jr., Esquire, ID. No. 76109
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
*femmerich@eckertseamans.com*
(215) 851-8409 (Telephone)
(215) 851-8383 (Telecopy)

*Attorneys for Defendants and Third Party Plaintiffs*
*KidsPeace, KidsPeace Corporation, and*
*KidsPeace National Centers, Inc.*

*M1892909 DOCX*

# CERTIFICATE OF SERVICE

I hereby certify that, on April 29, 2019, a copy of the foregoing Third Party Complaint of Defendants, KidsPeace, KidsPeace Corporation, and KidsPeace National Centers, Inc. was served via United States Mail, first class, postage prepaid, upon the following:

> Gregory S. Spizer, Esquire
> Emily B. Ashe, Esquire
> Anapol Weiss
> 130 North 18th Street, Suite 1600
> Philadelphia, PA 19103
>
> *Attorneys for Plaintiff, M B*
>
>
> Frank L. Tamulonis, Jr., Esquire
> Liberman Tamulonis & Hobbs
> 111 East Market Street
> Pottsville, PA 17901
>
> *Attorney for Defendants Schuylkill County,*
> *Schuylkill County Children & Youth Services,*
> *and Marcia Hoke*

/s/ Frank R. Emmerich Jr.
Frank R. Emmerich Jr., Esquire